# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GABRIEL GONZALEZ,

    Petitioner,

vs.

JIM BENEDETTI, et al.,

    Respondents.

Case No. 3:10-cv-00695-HDM-VPC

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#7), respondents' answer (#21), and petitioner's reply (#22).  The court finds that relief is not warranted, and the court denies the petition.

### Procedural History

    In state district court, petitioner was charged with one count of trafficking in a controlled substance and one count of conspiracy to trafficking in a controlled substance.  Ex. 29 (#10). After a trial, the jury found him guilty of trafficking in a controlled substance.  Ex 37 (#11).  The trial court entered its amended judgment of conviction on January 10, 2007.  Ex. 42 (#11). Petitioner appealed.  The Nevada Supreme Court affirmed on March 6, 2008.  Ex. 51 (#11).

Petitioner then filed in state district court a post-conviction habeas corpus petition on September 18, 2008.  Ex. 55 (#12).  The state district court denied the petition on November 10, 2009.  Ex. 64 (#12).  Petitioner appealed.  The Nevada Supreme Court affirmed on September 10, 2010.  Ex. 71 (#12).  The federal habeas corpus petition (#7) followed.

**Facts**

Clarence Andreozzi was facing charges of possession of drug paraphernalia.  He agreed with the police to arrange a controlled purchase of cocaine, so that the police could arrest a supplier of the drug.  In return, the police would drop the charges against him.

Andreozzi contacted Marrio Williams and arranged the transaction.  In the telephone conversations between the two, Williams said that petitioner was the source of the cocaine.  Eventually, the two agreed that Andreozzi would meet Williams and petitioner at a parking lot in Lovelock, Nevada, for the transaction.

The meeting occurred as planned.  The police were near, but hidden, and they could not see the transaction themselves.  Andreozzi was wearing a hidden transmitter, but it did not work very well, and the recording provided no useful information.  Williams testified that petitioner drove Williams' car from Reno, Nevada, to Lovelock.  Williams sat in the back seat.  Petitioner's girlfriend, Jannet Ordaz, accompanied them, and she sat in the front passenger seat.  Andreozzi and Williams testified that Andreozzi approached the car, handed pre-recorded purchase money to petitioner, and received one ounce of cocaine in return.  Williams

-2-

1  also testified that when petitioner took out the cocaine to give to
2  Andreozzi, petitioner dropped the bag.  Williams picked the bag up
3  and handed it back to petitioner, who gave it to Andreozzi.

4      After Andreozzi walked away from the car, petitioner started
5  to drive away.  The police intercepted petitioner in the parking
6  lot.  They arrested petitioner, Williams, and Ordaz.  They
7  recovered the pre-recorded purchase money from petitioner.  They
8  also found several grams of cocaine in Ms. Ordaz's purse.

9      Williams had not been working with the police before the
10  arrest, but he agreed to provide testimony against petitioner.

11      Ordaz ultimately pleaded no contest to trafficking in a
12  controlled substance.

### Standard of Review

14      Congress has limited the circumstances in which a federal
15  court can grant relief to a petitioner who is in custody pursuant
16  to a judgment of conviction of a state court.

17      An application for a writ of habeas corpus on behalf of a
       person in custody pursuant to the judgment of a State court
18      shall not be granted with respect to any claim that was
       adjudicated on the merits in State court proceedings unless
19      the adjudication of the claim—

20      (1) resulted in a decision that was contrary to, or involved
       an unreasonable application of, clearly established Federal
21      law, as determined by the Supreme Court of the United States;
       or
22
       (2) resulted in a decision that was based on an unreasonable
23      determination of the facts in light of the evidence presented
       in the State court proceeding.
24
25  28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of
26  any claim 'adjudicated on the merits' in state court, subject only
27  to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.
28  Richter, 131 S. Ct. 770, 784 (2011).

-3-

1
2
3
4
5

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

6  <u>Richter</u>, 131 S. Ct. at 785.  "For purposes of § 2254(d)(1), 'an
7  unreasonable application of federal law is different from an
8  incorrect application of federal law.'"  <u>Id.</u> (citation omitted).
9  "A state court's determination that a claim lacks merit precludes
10 federal habeas relief so long as 'fairminded jurists could
11 disagree' on the correctness of the state court's decision."  <u>Id.</u>
12 (citation omitted).

13
14
15

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

16 <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

17
18
19
20

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

21 <u>Richter</u>, 131 S. Ct. at 786.

22
23
24
25

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

26 <u>Id.</u>, at 786-87.

27 ///

28 ///

-4-

**Discussion**

Grounds 1, 2 and 3 are claims of error in the trial court. Petitioner did not present these claims on direct appeal. He did present the claims in his state habeas corpus petition. The state district court and the Nevada Supreme Court construed these claims as claims of ineffective assistance of counsel. Nonetheless, the court presumes that the state courts considered the merits of the underlying claims. Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013). Indeed, the state courts' analyses of whether petitioner suffered any prejudice are analyses on the merits of the claims.

Ground 1 is a claim that petitioner is actually innocent. On this issue, the Nevada Supreme Court held:

> Fourth, appellant claimed that his appellate counsel was ineffective for failing to argue that he was innocent and for raising only frivolous arguments. Appellant failed to demonstrate that he was prejudiced. A review of the record reveals sufficient evidence to establish appellant's guilt beyond a reasonable doubt, Leonard v. State, 114 Nev. 1196, 1209-10, 969 P.2d 288, 297 (1998), thus he failed to demonstrate that a claim of innocence would have had a reasonable likelihood of success on appeal. Further, he failed to demonstrate that he was prejudiced by his appellate counsel's failure to raise any additional claims. Therefore, the district court did not err in denying this claim.

Ex. 71, at 4 (#12). The Supreme Court of the United States has not determined whether a free-standing claim of actual innocence exists in federal habeas corpus. District Attorney's Office for Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2321 (2009); Herrera v. Collins, 506 U.S. 390, 398-417 (1993)). Without any clearly established federal law on the issue, the Nevada Supreme Court's determination cannot be contrary to, or an unreasonable application of, clearly established federal law. Carey v. Musladin, 549 U.S. 70, 77 (2006). Ground 1 is without merit.

-5-

1     Ground 2 is a claim that the prosecution knowingly used

2  perjured testimony to convict petitioner.  Napue v. Illinois, 360

3  U.S. 264, 269-70 (1959); Pyle v. Kansas, 317 U.S. 213, 216 (1942);

4  Mooney v. Holohan, 294 U.S. 103, 112 (1935) (per curiam).  On this

5  issue, the Nevada Supreme Court held:

6          Third, appellant claimed that his appellate counsel was
           ineffective for failing to argue that the State knowingly used
7          perjured testimony to convict him.  Appellant failed to
           demonstrate that his appellate counsel's performance was
8          deficient.  Nothing in the record supports appellant's claim
           that the State knew two witnesses committed perjury.
9          Appellant's bare and naked claims are insufficient to
           demonstrate that he is entitled to relief for this claim.
10         Hargrove v. State, 100 Nev. 498, 502, 686 P.2d 222, 225
           (1984).  Therefore, the district court did not err in denying
11         this claim.

12 Ex. 71, at 4 (#12).

13     Petitioner argues that at sentencing the trial judge stated

14 that Williams and Andreozzi committed perjury.  This is what the

15 judge actually said:

16         What I am telling you is that the evidence before this Court,
           and I take judicial notice of everything that came out in the
17         trial, is that you were involved with a group of people in
           Reno.  One of those, who happened to live in Battle Mountain,
18         he got caught with drugs.  Within the drug world, there are no
           loyalties.  It's a world of deception and lies and cheating
19         and no loyalty.  The only loyalty that you have are the people
           sitting in the courtroom, your family.
20
           Where are your friends?  Where are your friends that you were
21         involved with the drug dealing and all that?  I don't see them
           in the in courtroom.  And they will never be here.  They
22         abandon—they abandon those who get caught, because they know
           that they are next and that they could be in that same
23         position.  So the people that you came here with, um, you may
           still consider your friends.  But I'm telling you the way this
24         entire system, and it's a pretty ugly system, works.  It's
           like one person gets caught and it's like tag.  They catch the
25         next person and clear on down the line.  And you were it.  And
           that's what it is today.
26

27 Ex. 40, at 37-38 (#11).  Petitioner takes the judge's statements

28 out of context.  The judge did not state that Williams and

                                  -6-

1  Andreozzi testified falsely.  The judge expanded upon the old
2  aphorism that there is no honor among thieves.

3      Furthermore, petitioner has not proven that the testimony in
4  question was perjured.  Petitioner has shown minor inconsistencies
5  between the testimony of Williams and the testimony of Andreozzi,
6  but minor inconsistencies occur often when two different people
7  testify about their own recollections of the same event.  Other
8  than petitioner's own statement that Andreozzi and Williams
9  perjured themselves, nothing in the record supports that argument.
10 Even if petitioner testified at trial to a different version of
11 events, that testimony would not prove that Andreozzi and Williams
12 perjured themselves.  Furthermore, the officers testified that they
13 knew before the transaction that Williams was not the drug dealer,
14 but that he was the facilitator between Andreozzi and petitioner.
15 The officers also testified that Williams was not working for them,
16 and that Williams agreed to testify against petitioner only after
17 Williams was arrested.  For petitioner's claim to be true, there
18 would have to be evidence of a conspiracy between Williams and
19 Andreozzi to frame petitioner for a crime.  There is no evidence of
20 such a conspiracy.  Consequently, the Nevada Supreme Court
21 reasonably could have determined that the prosecution did not know
22 that it was using perjured testimony; it also reasonably could have
23 determined that petitioner had not proven that the testimony was
24 perjured.  Ground 2 is without merit.

25     In ground 3, petitioner claims that the third amended
26 information did not give petitioner notice that the prosecution
27 would pursue the theory of aiding and abetting for the charge of
28

1    trafficking in a controlled substance.  On this issue, the Nevada

2    Supreme Court held:

3         First, appellant claimed that his trial counsel was
         ineffective for failing to argue that the State did not
4         provide notice of criminal liability under an aider and
         abettor theory.  Appellant cannot demonstrate that his trial
5         counsel was deficient because, in the third amended
         information, the State charged appellant with trafficking in a
6         controlled substance and listed NRS 195.020, which states that
         one who aids or abets shall be punished as a principal.
7         Appellant failed to demonstrate prejudice because the evidence
         showed that he personally sold the cocaine to the police
8         informant.  Therefore, the district court did not err in
         denying this claim. . . .
9
         Second, appellant claimed that his appellate counsel was
10        ineffective for failing to argue that the State did not
         provide notice of criminal liability under an aider and
11        abettor theory.  As discussed previously, the State charged
         appellant as an aider and abettor in the third amended
12        information.  Accordingly, appellant failed to demonstrate
         that the underlying issue had a reasonable likelihood of
13        success on appeal.  Therefore, the district court did not err
         in denying this claim.
14

15   Ex. 71, at 2, 4 (#12).  Count 1 of the third amended information

16   does give petitioner notice of the theory of aiding and abetting.

17   Ex. 29, at 1 (#10).  Ground 3 has no support in the record.  The

18   Nevada Supreme Court's decision was not contrary to, or an

19   unreasonable application of, clearly established federal law.

20        Ground 4 contains three claims of ineffective assistance of

21   trial counsel.  "[T]he right to counsel is the right to the

22   effective assistance of counsel."  McMann v. Richardson, 397 U.S.

23   759, 771 & n.14 (1970).  A petitioner claiming ineffective

24   assistance of counsel must demonstrate (1) that the defense

25   attorney's representation "fell below an objective standard of

26   reasonableness," Strickland v. Washington, 466 U.S. 668, 688

27   (1984), and (2) that the attorney's deficient performance

28   prejudiced the defendant such that "there is a reasonable

1   probability that, but for counsel's unprofessional errors, the
2   result of the proceeding would have been different," id. at 694.
3   "[T]here is no reason for a court deciding an ineffective
4   assistance claim to approach the inquiry in the same order or even
5   to address both components of the inquiry if the defendant makes an
6   insufficient showing on one."  Id. at 697.

7       Strickland expressly declines to articulate specific
8   guidelines for attorney performance beyond generalized duties,
9   including the duty of loyalty, the duty to avoid conflicts of
10  interest, the duty to advocate the defendant's cause, and the duty
11  to communicate with the client over the course of the prosecution.
12  466 U.S. at 688.  The Court avoided defining defense counsel's
13  duties so exhaustively as to give rise to a "checklist for judicial
14  evaluation of attorney performance. . . .  Any such set of rules
15  would interfere with the constitutionally protected independence of
16  counsel and restrict the wide latitude counsel must have in making
17  tactical decisions."  Id. at 688-89.

18      Review of an attorney's performance must be "highly
19  deferential," and must adopt counsel's perspective at the time of
20  the challenged conduct to avoid the "distorting effects of
21  hindsight."  Strickland, 466 U.S. at 689.  A reviewing court must
22  "indulge a strong presumption that counsel's conduct falls within
23  the wide range of reasonable professional assistance; that is, the
24  defendant must overcome the presumption that, under the
25  circumstances, the challenged action 'might be considered sound
26  trial strategy.'"  Id. (citation omitted).

27      The Sixth Amendment does not guarantee effective counsel per
28  se, but rather a fair proceeding with a reliable outcome.  See

-9-

1  _Strickland_, 466 U.S. at 691-92.  _See also_ _Jennings v. Woodford_, 290

2  F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration

3  that counsel fell below an objective standard of reasonableness

4  alone is insufficient to warrant a finding of ineffective

5  assistance.  The petitioner must also show that the attorney's

6  sub-par performance prejudiced the defense.  _Strickland_, 466 U.S.

7  at 691-92.  There must be a reasonable probability that, but for

8  the attorney's challenged conduct, the result of the proceeding in

9  question would have been different.  _Id._ at 694.  "A reasonable

10 probability is a probability sufficient to undermine confidence in

11 the outcome."  _Id._

12        Establishing that a state court's application of _Strickland_
          was unreasonable under § 2254(d) is all the more difficult.
13        The standards created by _Strickland_ and § 2254(d) are both
          "highly deferential," . . . and when the two apply in tandem,
14        review is "doubly" so . . . .  The _Strickland_ standard is a
          general one, so the range of reasonable applications is
15        substantial.  Federal habeas courts must guard against the
          danger of equating unreasonableness under _Strickland_ with
16        unreasonableness under § 2254(d). When § 2254(d) applies, the
          question is not whether counsel's actions were reasonable. The
17        question is whether there is any reasonable argument that
          counsel satisfied _Strickland's_ deferential standard.
18

19 _Harrington v. Richter_, 131 S. Ct. 770, 788 (2011) (citations

20 omitted).

21       The court uses respondents' designations for the claims of

22 ineffective assistance.  In ground 4(1), petitioner argues that

23 counsel failed to question Williams or Andreozzi about their prior

24 criminal records.  On this issue, the Nevada Supreme Court held:

25        Third, appellant claimed that his trial counsel was
          ineffective for failing to impeach M. Williams' testimony with
26        his criminal history.  Appellant cannot demonstrate that his
          trial counsel's performance was deficient because counsel
27        attempted to question the witness in this area, but the
          district court precluded questioning of this nature due to the
28

-10-

1       age of the conviction.  See NRS 50.095(2).  Therefore, the
        district court did not err in denying this claim.
2

3   Ex. 71, at 2-3 (#12).  The transcript shows that counsel did try to

4   cross-examine Williams about a prior felony conviction.  The trial

5   court did not allow the questioning because the prior conviction

6   was too old to qualify under Nev. Rev. Stat. § 50.095.  Ex. 34, at

7   37-40 (#11).  Counsel could have done nothing else.  Counsel also

8   cross-examined Andreozzi on the one item that would be the most

9   impeaching:  Andreozzi's deal with police not to be charged in

10  exchange for setting up the transaction.  Ex. 33, at 54 (#11).  The

11  court agrees with respondents that petitioner has not presented any

12  evidence that Andreozzi had a criminal history that would have been

13  admissible pursuant to Nev. Rev. Stat. § 50.095.  The Nevada

14  Supreme Court applied Strickland reasonably.

15      In ground 4(2), petitioner claims that counsel failed to call

16  Janet Ordaz to testify on petitioner's behalf.  On this issue, the

17  Nevada Supreme Court ruled:

18          Second, appellant claimed that his trial counsel was
            ineffective for failing to call J. Ordaz to testify because
19          she could have provided an alibi.  Appellant failed to
            demonstrate that he was prejudiced.  As Ordaz was in the
20          vehicle with appellant during the drug transaction and
            appellant was seen by numerous police officers participating
21          in the sale of cocaine, appellant failed to demonstrate that
            she could have provided an alibi for appellant.  Given the
22          evidence produced at trial, appellant failed to demonstrate a
            reasonable probability that the outcome of the trial would
23          have been different had Ordaz testified at his trial.
            Therefore, the district court did not err in denying this
24          claim.

25  Ex. 71, at 2 (#12).  To the extent that petitioner claimed that

26  Ordaz could have provided an alibi, the Nevada Supreme Court was
27

28

                                      -11-

1    correct.[1]  Police officers found both petitioner and Ordaz in the

2    car.  Ordaz could not have testified that petitioner was elsewhere.

3    However, petitioner alleged in ground 4 of his state habeas corpus

4    petition, and he alleges in ground 4 of his federal petition, that

5    Ordaz was "an eyewitness and/or alibi witness."  The Nevada Supreme

6    Court's decision does not address counsel's decision not to call

7    Ordaz for her eyewitness testimony of events.  The state district

8    court did address that contention.  It held:

9          Here, Petitioner fails to overcome the presumption that trial
           counsel's decision was not based upon prudent trial strategy.
10         The record demonstrates that Ms. Ordaz was with petitioner
           when he provided cocaine to the cooperative source.  Upon
11         arresting Ms. Ordaz and Petitioner, detectives found several
           grams of cocaine in Ms. Ordaz's purse.  This discovery
12         ultimately resulted in Ms. Ordaz being convicted of
           Trafficking in a Controlled substance.  These facts constitute
13         reasonable grounds for trial counsel not to call Ms. Ordaz to
           testify.  Rather than risk the jury imputing Ms. Ordaz's guilt
14         to Petitioner, trial counsel made the tactical decision not to
           call her to the stand.  Accordingly, Petitioner's trial
15         counsel did not provide ineffective assistance of counsel.

16   Ex. 64, at 5-6 (#12).  The court presumes that the Nevada Supreme

17   Court rejected petitioner's claims for the same reason.  See

18   Williams, 133 S. Ct. at 1094.  Counsel's strategy was to argue that

19   Williams actually was the trafficker, and that the police charged

20   the wrong man with the more serious crime.  That strategy would

21   have become more difficult if the jury learned that petitioner's

22   girlfriend, not Williams, was in possession of cocaine.

23   Consequently, the state-court determination was a reasonable

24   application of Strickland.

25

26

27         [1]Perhaps petitioner was using the term "alibi" incorrectly, to
     mean that Ordaz would have testified that petitioner was not the
28   person who sold cocaine to Andreozzi.

                                    -12-

1    In ground 4(3), petitioner claims counsel did not object to

2 the theory of aiding and abetting because the third amended

3 information did not put him on notice of that theory.  The Nevada

4 Supreme Court determined that this claim lacked merit because the

5 third amended information did put petitioner on notice of the

6 theory of aiding and abetting.  Ex. 71, at 2, 4 (#12).[2]  The Nevada

7 Supreme Court's determination that counsel did not perform

8 deficiently was a reasonable application of Strickland.

9                              **Conclusion**

10   To appeal the denial of a petition for a writ of habeas

11 corpus, Petitioner must obtain a certificate of appealability,

12 after making a "substantial showing of the denial of a

13 constitutional right."  28 U.S.C. §2253(c).

14       Where a district court has rejected the constitutional claims
         on the merits, the showing required to satisfy §2253(c) is
15       straightforward:  The petitioner must demonstrate that
         reasonable jurists would find the district court's assessment
16       of the constitutional claims debatable or wrong.

17 Slack v. McDaniel, 529 U.S. 473, 484 (2000).  After reviewing its

18 decision, the court concludes that reasonable jurists would not

19 find its conclusions to be debatable or wrong.  The court will not

20 issue a certificate of appealability.

21 ///

22 ///

23 ///

24

25

26

27 ───────────────

28       [2]The court has quoted that decision in its discussion of
    ground 3, above.

                              -13-

1      IT IS THEREFORE ORDERED that the petition for a writ of habeas

2  corpus (#7) is **DENIED.**  The clerk of the court shall enter judgment

3  accordingly.

4      IT IS FURTHER ORDERED that a certificate of appealability is

5  **DENIED.**

6      DATED: March 6, 2014.

7

8                              _____
                               HOWARD D. MCKIBBEN

9                               United States District Judge

-14-