1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                       **DISTRICT OF NEVADA**
8
9   GABRIEL GONZALEZ,
10       Petitioner,                    Case No. 3:10-cv-00695-HDM-VPC
11  vs.                                 **ORDER**
12  JIM BENEDETTI, et al.,
13       Respondents.
14
15       Before the court are the petition for a writ of habeas corpus
16  pursuant to 28 U.S.C. § 2254 (#7), respondents' answer (#21), and
17  petitioner's reply (#22).  The court finds that relief is not
18  warranted, and the court denies the petition.
19                       **Procedural History**
20       In state district court, petitioner was charged with one count
21  of trafficking in a controlled substance and one count of
22  conspiracy to trafficking in a controlled substance.  Ex. 29 (#10).
23  After a trial, the jury found him guilty of trafficking in a
24  controlled substance.  Ex 37 (#11).  The trial court entered its
25  amended judgment of conviction on January 10, 2007.  Ex. 42 (#11).
26  Petitioner appealed.  The Nevada Supreme Court affirmed on March 6,
27  2008.  Ex. 51 (#11).
28

1    Petitioner then filed in state district court a post-
2    conviction habeas corpus petition on September 18, 2008.  Ex. 55
3    (#12).  The state district court denied the petition on November
4    10, 2009.  Ex. 64 (#12).  Petitioner appealed.  The Nevada Supreme
5    Court affirmed on September 10, 2010.  Ex. 71 (#12).  The federal
6    habeas corpus petition (#7) followed.

**Facts**

8    Clarence Andreozzi was facing charges of possession of drug
9    paraphernalia.  He agreed with the police to arrange a controlled
10   purchase of cocaine, so that the police could arrest a supplier of
11   the drug.  In return, the police would drop the charges against
12   him.

13   Andreozzi contacted Marrio Williams and arranged the
14   transaction.  In the telephone conversations between the two,
15   Williams said that petitioner was the source of the cocaine.
16   Eventually, the two agreed that Andreozzi would meet Williams and
17   petitioner at a parking lot in Lovelock, Nevada, for the
18   transaction.

19   The meeting occurred as planned.  The police were near, but
20   hidden, and they could not see the transaction themselves.
21   Andreozzi was wearing a hidden transmitter, but it did not work
22   very well, and the recording provided no useful information.
23   Williams testified that petitioner drove Williams' car from Reno,
24   Nevada, to Lovelock.  Williams sat in the back seat.  Petitioner's
25   girlfriend, Jannet Ordaz, accompanied them, and she sat in the
26   front passenger seat.  Andreozzi and Williams testified that
27   Andreozzi approached the car, handed pre-recorded purchase money to
28   petitioner, and received one ounce of cocaine in return.  Williams

-2-

1  also testified that when petitioner took out the cocaine to give to
2  Andreozzi, petitioner dropped the bag.  Williams picked the bag up
3  and handed it back to petitioner, who gave it to Andreozzi.

4      After Andreozzi walked away from the car, petitioner started
5  to drive away.  The police intercepted petitioner in the parking
6  lot.  They arrested petitioner, Williams, and Ordaz.  They
7  recovered the pre-recorded purchase money from petitioner.  They
8  also found several grams of cocaine in Ms. Ordaz's purse.

9      Williams had not been working with the police before the
10 arrest, but he agreed to provide testimony against petitioner.

11     Ordaz ultimately pleaded no contest to trafficking in a
12 controlled substance.

**Standard of Review**

14     Congress has limited the circumstances in which a federal
15 court can grant relief to a petitioner who is in custody pursuant
16 to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States;
> or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

25 28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of
26 any claim 'adjudicated on the merits' in state court, subject only
27 to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.
28 Richter, 131 S. Ct. 770, 784 (2011).

1
2
3
4
5

>Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

6 Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an

7 unreasonable application of federal law is different from an

8 incorrect application of federal law.'" Id. (citation omitted).

9 "A state court's determination that a claim lacks merit precludes

10 federal habeas relief so long as 'fairminded jurists could

11 disagree' on the correctness of the state court's decision." Id.

12 (citation omitted).

13
14
15

>[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

16 Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

17
18
19
20

>Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

21 Richter, 131 S. Ct. at 786.

22
23
24
25

>As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

26 Id., at 786-87.

27 ///

28 ///

-4-

## Discussion

Grounds 1, 2 and 3 are claims of error in the trial court. Petitioner did not present these claims on direct appeal. He did present the claims in his state habeas corpus petition. The state district court and the Nevada Supreme Court construed these claims as claims of ineffective assistance of counsel. Nonetheless, the court presumes that the state courts considered the merits of the underlying claims. <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1094 (2013). Indeed, the state courts' analyses of whether petitioner suffered any prejudice are analyses on the merits of the claims.

Ground 1 is a claim that petitioner is actually innocent. On this issue, the Nevada Supreme Court held:

> Fourth, appellant claimed that his appellate counsel was ineffective for failing to argue that he was innocent and for raising only frivolous arguments. Appellant failed to demonstrate that he was prejudiced. A review of the record reveals sufficient evidence to establish appellant's guilt beyond a reasonable doubt, <u>Leonard v. State</u>, 114 Nev. 1196, 1209-10, 969 P.2d 288, 297 (1998), thus he failed to demonstrate that a claim of innocence would have had a reasonable likelihood of success on appeal. Further, he failed to demonstrate that he was prejudiced by his appellate counsel's failure to raise any additional claims. Therefore, the district court did not err in denying this claim.

Ex. 71, at 4 (#12). The Supreme Court of the United States has not determined whether a free-standing claim of actual innocence exists in federal habeas corpus. <u>District Attorney's Office for Third Judicial Dist. v. Osborne</u>, 129 S. Ct. 2308, 2321 (2009); <u>Herrera v. Collins</u>, 506 U.S. 390, 398-417 (1993)). Without any clearly established federal law on the issue, the Nevada Supreme Court's determination cannot be contrary to, or an unreasonable application of, clearly established federal law. <u>Carey v. Musladin</u>, 549 U.S. 70, 77 (2006). Ground 1 is without merit.

-5-

1    Ground 2 is a claim that the prosecution knowingly used

2 perjured testimony to convict petitioner.  Napue v. Illinois, 360

3 U.S. 264, 269-70 (1959); Pyle v. Kansas, 317 U.S. 213, 216 (1942);

4 Mooney v. Holohan, 294 U.S. 103, 112 (1935) (per curiam).  On this

5 issue, the Nevada Supreme Court held:

6       Third, appellant claimed that his appellate counsel was
        ineffective for failing to argue that the State knowingly used
7       perjured testimony to convict him.  Appellant failed to
        demonstrate that his appellate counsel's performance was
8       deficient.  Nothing in the record supports appellant's claim
        that the State knew two witnesses committed perjury.
9       Appellant's bare and naked claims are insufficient to
        demonstrate that he is entitled to relief for this claim.
10      Hargrove v. State, 100 Nev. 498, 502, 686 P.2d 222, 225
        (1984).  Therefore, the district court did not err in denying
11      this claim.

12 Ex. 71, at 4 (#12).

13      Petitioner argues that at sentencing the trial judge stated

14 that Williams and Andreozzi committed perjury.  This is what the

15 judge actually said:

16      What I am telling you is that the evidence before this Court,
        and I take judicial notice of everything that came out in the
17      trial, is that you were involved with a group of people in
        Reno.  One of those, who happened to live in Battle Mountain,
18      he got caught with drugs.  Within the drug world, there are no
        loyalties.  It's a world of deception and lies and cheating
19      and no loyalty.  The only loyalty that you have are the people
        sitting in the courtroom, your family.

20
        Where are your friends?  Where are your friends that you were
21      involved with the drug dealing and all that?  I don't see them
        in the in courtroom.  And they will never be here.  They
22      abandon—they abandon those who get caught, because they know
        that they are next and that they could be in that same
23      position.  So the people that you came here with, um, you may
        still consider your friends.  But I'm telling you the way this
24      entire system, and it's a pretty ugly system, works.  It's
        like one person gets caught and it's like tag.  They catch the
25      next person and clear on down the line.  And you were it.  And
        that's what it is today.

26

27 Ex. 40, at 37-38 (#11).  Petitioner takes the judge's statements

28 out of context.  The judge did not state that Williams and

-6-

1   Andreozzi testified falsely.  The judge expanded upon the old

2   aphorism that there is no honor among thieves.

3        Furthermore, petitioner has not proven that the testimony in

4   question was perjured.  Petitioner has shown minor inconsistencies

5   between the testimony of Williams and the testimony of Andreozzi,

6   but minor inconsistencies occur often when two different people

7   testify about their own recollections of the same event.  Other

8   than petitioner's own statement that Andreozzi and Williams

9   perjured themselves, nothing in the record supports that argument.

10  Even if petitioner testified at trial to a different version of

11  events, that testimony would not prove that Andreozzi and Williams

12  perjured themselves.  Furthermore, the officers testified that they

13  knew before the transaction that Williams was not the drug dealer,

14  but that he was the facilitator between Andreozzi and petitioner.

15  The officers also testified that Williams was not working for them,

16  and that Williams agreed to testify against petitioner only after

17  Williams was arrested.  For petitioner's claim to be true, there

18  would have to be evidence of a conspiracy between Williams and

19  Andreozzi to frame petitioner for a crime.  There is no evidence of

20  such a conspiracy.  Consequently, the Nevada Supreme Court

21  reasonably could have determined that the prosecution did not know

22  that it was using perjured testimony; it also reasonably could have

23  determined that petitioner had not proven that the testimony was

24  perjured.  Ground 2 is without merit.

25       In ground 3, petitioner claims that the third amended

26  information did not give petitioner notice that the prosecution

27  would pursue the theory of aiding and abetting for the charge of

28

1   trafficking in a controlled substance.  On this issue, the Nevada

2   Supreme Court held:

> First, appellant claimed that his trial counsel was
> ineffective for failing to argue that the State did not
> provide notice of criminal liability under an aider and
> abettor theory.  Appellant cannot demonstrate that his trial
> counsel was deficient because, in the third amended
> information, the State charged appellant with trafficking in a
> controlled substance and listed NRS 195.020, which states that
> one who aids or abets shall be punished as a principal.
> Appellant failed to demonstrate prejudice because the evidence
> showed that he personally sold the cocaine to the police
> informant.  Therefore, the district court did not err in
> denying this claim. . . .
>
> Second, appellant claimed that his appellate counsel was
> ineffective for failing to argue that the State did not
> provide notice of criminal liability under an aider and
> abettor theory.  As discussed previously, the State charged
> appellant as an aider and abettor in the third amended
> information.  Accordingly, appellant failed to demonstrate
> that the underlying issue had a reasonable likelihood of
> success on appeal.  Therefore, the district court did not err
> in denying this claim.

15  Ex. 71, at 2, 4 (#12).  Count 1 of the third amended information

16  does give petitioner notice of the theory of aiding and abetting.

17  Ex. 29, at 1 (#10).  Ground 3 has no support in the record.  The

18  Nevada Supreme Court's decision was not contrary to, or an

19  unreasonable application of, clearly established federal law.

20      Ground 4 contains three claims of ineffective assistance of

21  trial counsel.  "[T]he right to counsel is the right to the

22  effective assistance of counsel."  McMann v. Richardson, 397 U.S.

23  759, 771 & n.14 (1970).  A petitioner claiming ineffective

24  assistance of counsel must demonstrate (1) that the defense

25  attorney's representation "fell below an objective standard of

26  reasonableness," Strickland v. Washington, 466 U.S. 668, 688

27  (1984), and (2) that the attorney's deficient performance

28  prejudiced the defendant such that "there is a reasonable

-8-

1  probability that, but for counsel's unprofessional errors, the
2  result of the proceeding would have been different," id. at 694.
3  "[T]here is no reason for a court deciding an ineffective
4  assistance claim to approach the inquiry in the same order or even
5  to address both components of the inquiry if the defendant makes an
6  insufficient showing on one."  Id. at 697.

7      Strickland expressly declines to articulate specific
8  guidelines for attorney performance beyond generalized duties,
9  including the duty of loyalty, the duty to avoid conflicts of
10  interest, the duty to advocate the defendant's cause, and the duty
11  to communicate with the client over the course of the prosecution.
12  466 U.S. at 688.  The Court avoided defining defense counsel's
13  duties so exhaustively as to give rise to a "checklist for judicial
14  evaluation of attorney performance. . . .  Any such set of rules
15  would interfere with the constitutionally protected independence of
16  counsel and restrict the wide latitude counsel must have in making
17  tactical decisions."  Id. at 688-89.

18      Review of an attorney's performance must be "highly
19  deferential," and must adopt counsel's perspective at the time of
20  the challenged conduct to avoid the "distorting effects of
21  hindsight."  Strickland, 466 U.S. at 689.  A reviewing court must
22  "indulge a strong presumption that counsel's conduct falls within
23  the wide range of reasonable professional assistance; that is, the
24  defendant must overcome the presumption that, under the
25  circumstances, the challenged action 'might be considered sound
26  trial strategy.'"  Id. (citation omitted).

27      The Sixth Amendment does not guarantee effective counsel per
28  se, but rather a fair proceeding with a reliable outcome.  See

-9-

1  <u>Strickland</u>, 466 U.S. at 691-92.  <u>See also</u> <u>Jennings v. Woodford</u>, 290

2  F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration

3  that counsel fell below an objective standard of reasonableness

4  alone is insufficient to warrant a finding of ineffective

5  assistance.  The petitioner must also show that the attorney's

6  sub-par performance prejudiced the defense.  <u>Strickland</u>, 466 U.S.

7  at 691-92.  There must be a reasonable probability that, but for

8  the attorney's challenged conduct, the result of the proceeding in

9  question would have been different.  <u>Id.</u> at 694.  "A reasonable

10  probability is a probability sufficient to undermine confidence in

11  the outcome."  <u>Id.</u>

12      Establishing that a state court's application of <u>Strickland</u>
        was unreasonable under § 2254(d) is all the more difficult.
13      The standards created by <u>Strickland</u> and § 2254(d) are both
        "highly deferential," . . . and when the two apply in tandem,
14      review is "doubly" so . . . .  The <u>Strickland</u> standard is a
        general one, so the range of reasonable applications is
15      substantial.  Federal habeas courts must guard against the
        danger of equating unreasonableness under <u>Strickland</u> with
16      unreasonableness under § 2254(d). When § 2254(d) applies, the
        question is not whether counsel's actions were reasonable. The
17      question is whether there is any reasonable argument that
        counsel satisfied <u>Strickland's</u> deferential standard.

18

19  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 788 (2011) (citations

20  omitted).

21      The court uses respondents' designations for the claims of

22  ineffective assistance.  In ground 4(1), petitioner argues that

23  counsel failed to question Williams or Andreozzi about their prior

24  criminal records.  On this issue, the Nevada Supreme Court held:

25      Third, appellant claimed that his trial counsel was
        ineffective for failing to impeach M. Williams' testimony with
26      his criminal history.  Appellant cannot demonstrate that his
        trial counsel's performance was deficient because counsel
27      attempted to question the witness in this area, but the
        district court precluded questioning of this nature due to the

28

-10-

1      age of the conviction.  <u>See</u> NRS 50.095(2).  Therefore, the
       district court did not err in denying this claim.
2

3    Ex. 71, at 2-3 (#12).  The transcript shows that counsel did try to

4    cross-examine Williams about a prior felony conviction.  The trial

5    court did not allow the questioning because the prior conviction

6    was too old to qualify under Nev. Rev. Stat. § 50.095.  Ex. 34, at

7    37-40 (#11).  Counsel could have done nothing else.  Counsel also

8    cross-examined Andreozzi on the one item that would be the most

9    impeaching:  Andreozzi's deal with police not to be charged in

10   exchange for setting up the transaction.  Ex. 33, at 54 (#11).  The

11   court agrees with respondents that petitioner has not presented any

12   evidence that Andreozzi had a criminal history that would have been

13   admissible pursuant to Nev. Rev. Stat. § 50.095.  The Nevada

14   Supreme Court applied <u>Strickland</u> reasonably.

15        In ground 4(2), petitioner claims that counsel failed to call

16   Janet Ordaz to testify on petitioner's behalf.  On this issue, the

17   Nevada Supreme Court ruled:

18        Second, appellant claimed that his trial counsel was
          ineffective for failing to call J. Ordaz to testify because
19        she could have provided an alibi.  Appellant failed to
          demonstrate that he was prejudiced.  As Ordaz was in the
20        vehicle with appellant during the drug transaction and
          appellant was seen by numerous police officers participating
21        in the sale of cocaine, appellant failed to demonstrate that
          she could have provided an alibi for appellant.  Given the
22        evidence produced at trial, appellant failed to demonstrate a
          reasonable probability that the outcome of the trial would
23        have been different had Ordaz testified at his trial.
          Therefore, the district court did not err in denying this
24        claim.

25   Ex. 71, at 2 (#12).  To the extent that petitioner claimed that
26
     Ordaz could have provided an alibi, the Nevada Supreme Court was
27

28
                                    -11-

1 correct.[1]  Police officers found both petitioner and Ordaz in the

2 car.  Ordaz could not have testified that petitioner was elsewhere.

3 However, petitioner alleged in ground 4 of his state habeas corpus

4 petition, and he alleges in ground 4 of his federal petition, that

5 Ordaz was "an eyewitness and/or alibi witness."  The Nevada Supreme

6 Court's decision does not address counsel's decision not to call

7 Ordaz for her eyewitness testimony of events.  The state district

8 court did address that contention.  It held:

9      Here, Petitioner fails to overcome the presumption that trial
       counsel's decision was not based upon prudent trial strategy.
10     The record demonstrates that Ms. Ordaz was with petitioner
       when he provided cocaine to the cooperative source.  Upon
11     arresting Ms. Ordaz and Petitioner, detectives found several
       grams of cocaine in Ms. Ordaz's purse.  This discovery
12     ultimately resulted in Ms. Ordaz being convicted of
       Trafficking in a Controlled substance.  These facts constitute
13     reasonable grounds for trial counsel not to call Ms. Ordaz to
       testify.  Rather than risk the jury imputing Ms. Ordaz's guilt
14     to Petitioner, trial counsel made the tactical decision not to
       call her to the stand.  Accordingly, Petitioner's trial
15     counsel did not provide ineffective assistance of counsel.

16 Ex. 64, at 5-6 (#12).  The court presumes that the Nevada Supreme

17 Court rejected petitioner's claims for the same reason.  See

18 Williams, 133 S. Ct. at 1094.  Counsel's strategy was to argue that

19 Williams actually was the trafficker, and that the police charged

20 the wrong man with the more serious crime.  That strategy would

21 have become more difficult if the jury learned that petitioner's

22 girlfriend, not Williams, was in possession of cocaine.

23 Consequently, the state-court determination was a reasonable

24 application of Strickland.

25

26

27      [1]Perhaps petitioner was using the term "alibi" incorrectly, to
   mean that Ordaz would have testified that petitioner was not the
28 person who sold cocaine to Andreozzi.

-12-

1    In ground 4(3), petitioner claims counsel did not object to

2 the theory of aiding and abetting because the third amended

3 information did not put him on notice of that theory.  The Nevada

4 Supreme Court determined that this claim lacked merit because the

5 third amended information did put petitioner on notice of the

6 theory of aiding and abetting.  Ex. 71, at 2, 4 (#12).[2]  The Nevada

7 Supreme Court's determination that counsel did not perform

8 deficiently was a reasonable application of <u>Strickland</u>.

9                            **Conclusion**

10    To appeal the denial of a petition for a writ of habeas

11 corpus, Petitioner must obtain a certificate of appealability,

12 after making a "substantial showing of the denial of a

13 constitutional right."  28 U.S.C. §2253(c).

14         Where a district court has rejected the constitutional claims
         on the merits, the showing required to satisfy §2253(c) is
15       straightforward:  The petitioner must demonstrate that
         reasonable jurists would find the district court's assessment
16       of the constitutional claims debatable or wrong.

17 <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  After reviewing its

18 decision, the court concludes that reasonable jurists would not

19 find its conclusions to be debatable or wrong.  The court will not

20 issue a certificate of appealability.

21 ///

22 ///

23 ///

24

25

26

27 ——————————————

28    [2]The court has quoted that decision in its discussion of
ground 3, above.

                              -13-

1    IT IS THEREFORE ORDERED that the petition for a writ of habeas

2 corpus (#7) is **DENIED**.  The clerk of the court shall enter judgment

3 accordingly.

4    IT IS FURTHER ORDERED that a certificate of appealability is

5 **DENIED**.

6    DATED: March 6, 2014.

7

8    _____

9    HOWARD D. MCKIBBEN
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-